UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MISTY N. HEIL, ) | CIV. 09-5074-JLV |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER GRANTING IN PART AND** |
| vs. ) | **DENYING IN PART PLAINTIFF'S** |
| ) | **MOTION TO COMPEL AND** |
| ) | **RECOMMENDATION AS TO** |
| BELLE STARR SALOON & CASINO ) | **PLAINTIFF'S MOTION TO EXTEND** |
| and ANGIE'S INC., and ) | **DEADLINES** |
| SHERWOOD INVESTMENT & TRUST ) | **[DOCKET NO. 20]** |
| CO., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**INTRODUCTION**

This matter is before the court on plaintiff Misty N. Heil's complaint

alleging sexual harassment, creation of a hostile work environment, and

retaliatory discharge and wrongful termination, in violation of Title VII

(42 U.S.C. §§ 2000e *et seq*), and assault and battery and intentional infliction

of emotional distress, in violation of South Dakota state law.  On December 14,

2010, Ms. Heil moved the district court for an order (1) compelling the

defendants' answers to her requests for discovery; (2) compelling disclosure of

the last-known contact information for Mr. Terry Blood, former Regional

Supervisor for the defendants; and (3) extending the discovery and motions

deadlines by a period of three months from the date of the court's order.  See

Docket Nos. 20, 21.  The district court, the Honorable Jeffrey L. Viken, referred

the plaintiff's motion to compel and extend deadlines to this magistrate judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A).  See Docket No. 24.

## BACKGROUND & PROCEDURAL HISTORY

On November 5, 2010, Ms. Heil served on the defendants, Belle Starr Saloon & Casino ("Belle Starr") and Angie's, Inc. ("Angie's"), her second set of interrogatories and requests for production ("RFPs").  See Docket No. 22, Affidavit of Brad J. Lee ("Aff. of B. Lee"), ¶ 1; Docket No. 22-1 ("11/05/10 letter to M. Wheeler with discovery requests").  The defendants' responses to these requests were due thirty days after service, on December 6, 2010.  See Docket No. 13, District Court's Scheduling Order, ¶ 4; FED. R. CIV. P. 33(b)(2).  The defendants did not supply responses to the discovery requests.  On December 8, 2010, Heil's counsel telephoned defense counsel to inquire if and when the discovery would be forthcoming.  See Docket Nos. 21, 22-2.  On December 9, 2010, Heil's counsel sent a letter via e-mail to defense counsel, advising that Ms. Heil would be filing a motion to compel discovery.  Docket No. 22-2.  Five days later, on December 14, 2010, Ms. Heil filed the present motion to compel. Docket No. 21.

In response to Ms. Heil's motion, the defendants represented that Belle Starr and Angie's had both filed, or were in the process of filing, a petition for dissolution/liquidation in South Dakota state court, pursuant to S.D.C.L. § 47-

2

1A-1403.[1]  See Docket No. 25.  The defendants did not address any of the discovery requests which were the subject of the motion to compel, and did not address the effect, if any, that a pending petition for dissolution in state court has on the federal litigation.  Id.  Instead, the defendants merely represented that neither corporation had the financial ability to continue to defend the matter, and that any financial resources remaining after dissolution would be used to pay the defendants' creditors and claimants.  Id.

Ms. Heil asserted in her reply brief that a pending petition for dissolution of a corporation has no effect on the present federal litigation.  Docket No. 26 (quoting S.D.C.L. § 47-1A-1405.1(6)).[2]  Ms. Heil further asserted that, under South Dakota state law, a "proceeding" for purposes of Title 47 (entitled "Corporations") "includes civil suit and criminal, administrative, and investigatory action."  Id. at 1-2 (quoting S.D.C.L. § 47-1A-140(32)).  Based on the applicable state statutes, and the defendants' failure to indicate any reasons why her motion should not be granted, Ms. Heil urges the court to grant her motion to compel and extend deadlines.

------------------------

[1]Ms. Heil correctly points out that the statute actually cited by the defendants, S.D.C.L. § 47-1A-1430(4), does not exist.  See Docket No. 26, n.1. The court agrees with Ms. Heil that the defendants likely intended to cite to S.D.C.L. § 47-1A-1403, which provides the means by which a corporation may dissolve following authorization by the corporation's shareholders.

[2] S.D.C.L. § 47-1A-1405.1(6) states, in pertinent part: "Dissolution of a corporation does not . . . [a]bate or suspend a proceeding pending by or against the corporation on the effective date of dissolution."

3

## DISCUSSION

**A.    Plaintiff's Motion to Compel Discovery**

### 1.    Meet-and-Confer Requirement

A motion to compel answers to interrogatories or requests for the production of documents is governed by FED. R. CIV. P. 37.  That rule provides, in pertinent part:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

See FED. R. CIV. P. 37(a)(1).

Likewise, the local rules in this district require a movant to attempt to informally resolve matters with the opposing party before filing a discovery motion:

> No objection to interrogatories, or to requests for admissions, or to answers to either relating to discovery matters shall be heard unless it affirmatively appears that counsel have met, either in person or by telephone, and attempted to resolve their differences through an informal conference.  Counsel for the moving party shall call for such conference before filing any motion relating to discovery matters. . . .

See D.S.D. LR 37.1.

In this case, Ms. Heil's counsel contacted defendants' counsel twice, once by phone, and once by e-mail, prior to filing the instant motion and attempted, unsuccessfully, to arrive at a mutually-agreeable solution.  See Docket No. 22-

4

2.  The second of these communications, on December 9, 2010, stated:  "Please accept my phone call and this letter as my attempt to meet and confer with you pursuant to the local rules."  Id.  Ms. Heil waited another five days following that e-mail, and having received no response from the defendants, filed the present motion to compel.  See Docket No. 20, dated December 14, 2010. Defendants have not addressed, and apparently take no issue with, Ms. Heil's representations regarding her attempts to contact defendants and resolve the discovery dispute.  Accordingly, the court finds that Ms. Heil has satisfied the meet-and-confer prerequisite to filing the instant discovery motion.  See FED. R. CIV. P. 37(a)(1); D.S.D LR 37.1.

### 2.    Scope of Discovery Under Rule 26

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard governing the scope of discovery in civil cases:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

See Fed. R. Civ. P. 26(b)(1).

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . .

5

encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D.Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

The Federal Rules distinguish between discoverability and admissibility of evidence.  Id. at 95; see also FED. R. CIV. P. 26(b), 32, and 33.  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery.  Discoverable information need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See FED. R. CIV. P. 26(b)(1) advisory committee's note.

Rule 26 requires the court to limit discovery if it determines, for example,

that the discovery sought is unreasonably cumulative or duplicative or that

"the burden or expense of the proposed discovery outweighs its likely benefit . .

. ."  See FED. R. CIV. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford,

Inc., 352 F.3d 358, 361 (8th Cir. 2003); and Continental Illinois Nat'l Bank &

Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D.Kan. 1991) ("All

discovery requests are a burden on the party who must respond thereto.

Unless the task of producing or answering is unusual, undue or extraordinary,

the general rule requires the entity answering or producing the documents to

bear that burden.").

### 3.    Defendants Have Waived the Right to Object to Plaintiff's Discovery Requests

Under Rule 33(b)(4), if not timely asserted, objections to discovery

requests are waived, unless the court finds good cause to excuse the failure to

object.  See, e.g., Janis v. Nelson, 2009 WL 5216898, at *8 (D.S.D. Dec. 30,

2009); Delaney v. Ashcraft, 2006 WL 2080023, at *1 (W.D. Ark. July 25, 2006).

Ms. Heil asserts that a pending petition for dissolution of a corporation

has no effect on the present federal litigation.  Docket. No. 26 (quoting S.D.C.L.

§ 47-1A-1405.1(6):  "Dissolution of a corporation does not . . . [a]bate or

suspend a proceeding pending by or against the corporation on the effective

date of dissolution.").  Ms. Heil asserts that, under South Dakota state law, a

"proceeding" for purposes of Title 47 (entitled "Corporations") "includes civil

suit and criminal, administrative, and investigatory action."  Id. at 1-2 (quoting

7

S.D.C.L. § 47-1A-140(32)).

Given that the applicable state statutes unambiguously state that a petition for dissolution does not abate or suspend civil litigation already pending against a corporation on the date the corporation is dissolved,[3] there is an absence of good cause appearing in the record to excuse the defendants' failure to timely object.  Accordingly, to the extent the defendants had objections to Ms. Heil's discovery requests, the defendants have waived the right to object.  FED. R. CIV. P. 33(b)(4).  The court now turns to the specific discovery requests made by Ms. Heil.

**4.    Plaintiff's Discovery Requests**

Ms. Heil's second set of interrogatories and RFPs requested responses to twelve interrogatories and three requests for production.  See Docket No. 22-1. Specifically, Ms. Heil's interrogatories requested information responsive to the following:

1.    The identity of every entity managed or supervised by Terry Blood during the years 2008-2010, and information relating thereto[4];

_____

[3] S.D.C.L. § 47-1A-1405.1(6) and S.D.C.L. § 47-1A-140(32), discussed supra.

[4] With respect to Interrogatories 1-3 and 10, Ms. Heil made identical requests for each entity's business name, legal name, address, owner, President, Vice President, Secretary, Treasurer, officers or directors, and shareholders with percentage of ownership.  The court's reference to "information relating thereto" indicates a request by Ms. Heil for the foregoing information.  See Docket No. 22-1, Interrogatories 1-3, 10.

2.      The identity of every gentlemen's club, strip club, or similar establishment owned in whole or in part by Thomas Sherwood, Thomas Sherwood, Jr., Sherwood Investment and Trust Company ("Sherwood Investment"), or any entity in which any of those individuals are involved, and information relating thereto;

3.      All entities which Sherwood Investment owns or operates, in whole or in part, and information relating thereto;

4.      The nature of the relationship between and among Sherwood Investment, Angie's, and Belle Star;

5.      The reason Angie's was listed as payor on Ms. Heil's paychecks when she was employed by Belle Starr;

6.      The reason Sherwood Investment possesses the company records of Belle Starr and Angie's;

7.      The identity of each individual or entity which is responsible for Belle Starr's business activities[5];

8.      The identity of each individual or entity which is responsible for Angie's business activities;

9.      The identity of each individual or entity which is responsible for Sherwood Investment's business activities;

10.     The identity of the entities that own the buildings and property used by the Belle Starr and Angie's, and information relating thereto;

11.     The identity of every employee who worked at Belle Starr or Angie's at any time during 2007 and/or 2008, along with identifying

---

[5]With respect to Interrogatories 7, 8, and 9, Ms. Heil made identical requests for information responsive to the following eleven categories of business activities:  contract negotiations, business license processing, payroll processing, payment of employees, insurance purchases, development of personnel policies, maintenance of personnel records; completion of tax returns, tax payments, human resources, and employment decisions.  See Docket No. 22-1, Interrogatories 7-9.

information relating to each employee[6]; and

12. The identity of all the institutions where Belle Starr, Angie's and Sherwood Investment conduct their banking activities.

Docket No. 22-1.

Ms. Heil made three requests for production:

1. A copy of the complete tax returns for Belle Star and Angie's for the years 2008, 2009, and 2010;

2. A copy of the corporate minutes for Belle Starr and Angie's, or any other entity that has discussed the operation of either Belle Starr or Angie's, for the years 2004-2010; and

3. A copy of all business agreements and lease agreements in effect for Belle Starr and Angie's during the years 2008-2010.

Id.

As discussed above, the defendants have wholly failed to address any of the interrogatories or RFPs in any respect. Instead, the defendants merely represented that Belle Starr and Angie's had each filed or would soon file a petition for dissolution and liquidation in the South Dakota state court system. Docket No. 25. The defendants stated that neither entity had the funds, assets, or financial ability to continue to defend the litigation. Id.

Despite the defendants' lack of objection to the discovery requests, the court is obliged to discuss the relevancy and scope of Ms. Heil's discovery

---

[6]With respect to Interrogatory number 11, Ms. Heil requested each employee's name (and stage name if known or applicable); address; phone number(s); date of birth; and social security number. See Docket No. 22-1, Interrogatory 11.

requests with respect to the standards set forth above.  The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007 (2d ed. 1994).   The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Federal Practice & Procedure, § 2007, at 96 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08 (1947)).

### a.    Interrogatory 1

The first interrogatory seeks the names of all entities managed by Terry Blood during 2008-2010, and the identity of those entities' owners, operators, and the like.  Ms. Heil represents that several other employees of the Belle Starr were sexually assaulted by Jason Olerup, and that these employees reported the assaults to Mr. Blood.  Docket No. 21, at 3.  Ms. Heil has attached to her motion to compel a copy of the Determination of Probable Cause issued by the South Dakota Division of Human Rights ("DHR").  See Docket No. 22-4. The "Findings of Fact" portion of that document states that the defendants' policy prohibiting sexual harassment named Terry Blood as "the individual responsible for receiving reports of sexual harassment."  Id. at ¶ 5.  Ms. Heil asserted that several of her co-workers told her they had "repeatedly reported [Jason Olerup's] behavior to the regional manager in Denver, Terry [Blood]."  Id.

11

at ¶ 10.  The defendants identified Mr. Blood as District Manager.  <u>Id.</u> at ¶ 12.
The defendants admitted that Mr. Blood participated in a high-level meeting
shortly after Ms. Heil filed a criminal complaint against Mr. Olerup, to discuss
Ms. Heil's allegations against Mr. Olerup.  <u>Id.</u> at ¶ 28.  In connection with the
DHR's investigation, the defendants provided an affidavit from Mr. Blood, dated
January 15, 2009, in which Mr. Blood described his role in the investigation
into Ms. Heil's allegations and how he learned of her accusations against
Mr. Olerup.  <u>Id.</u> at 34-35.

Through the defendants' admissions and the entirety of the DHR's
determination of probable cause, it appears that Mr. Blood was directly
involved in the defendants' initial handling of Ms. Heil's complaints against
Mr. Olerup.  Accordingly, the information Ms. Heil has requested in
Interrogatory 1 is relevant to the issues in this case.  The information is also
relevant to a determination about who, or what entity, may have made hiring
and firing decisions with respect to Belle Starr employees, including Ms. Heil.
Furthermore, the information sought through Interrogatory 1 may lead to the
identity and location of persons who know of additional discoverable matter.
<u>See</u> Fed. R. Civ. P. 26(b)(1).  Accordingly, Ms. Heil's motion to compel responses
to Interrogatory 1 is granted.

### b.     Interrogatory 2

Ms. Heil's second interrogatory seeks the identity of every gentlemen's

club, strip club, or similar establishment owned in whole or in part by Thomas Sherwood; Thomas Sherwood, Jr.; Sherwood Investment and Trust Company ("Sherwood Investment"); or any entity in which any of those individuals are involved, and information relating thereto.  Docket No. 22-1, at 4.  Ms. Heil told the DHR that Thomas Sherwood, Jr., visited the Belle Starr a few months before she was attacked by Mr. Olerup, and that Mr. Sherwood appeared at that time to be the owner of Belle Starr.  Docket No. 22-4, at ¶ 15.  Ms. Heil also told the DHR that she reported the alleged sexual harassment and assault "to Company President Thomas Sherwood, Jr."  Id. at ¶ 14.  The defendants provided to the DHR copies of the Annual Report to the South Dakota Secretary of State for both Belle Starr's and Angie's, dated October 8, 2007, both of which named Thomas W. Sherwood, Jr., of Newton, Pennsylvania, as President, Vice President, Secretary, and Treasurer.  Id. at ¶ 25.

Mr. Sherwood provided an affidavit to DHR stating that Ms. Heil contacted him about the alleged assault, and that he told her to report Mr. Olerup's conduct to law enforcement.  Id. at ¶ 37.  Mr. Sherwood's affidavit also stated that he told Ms. Heil there would be no repercussions against her for reporting Olerup's conduct.  Id.

Mr. Olerup's affidavit[7] asserts that while he was the manager of Belle

---

[7]Ms. Heil did not provide Mr. Olerup's affidavit to the court in connection with her motion to compel, which was filed on December 14, 2010.  Mr. Olerup executed his affidavit three days later, on December 17, 2010.  Ms. Heil

Starr, his supervisor, Terry Blood, "reported directly to Tom Sherwood and Tom Sherwood, Jr., who are the owners of the Belle Starr."  Docket No. 29-3, Aff. of J. Olerup, at ¶ 3.  He asserts that Tom Sherwood and Tom Sherwood, Jr. owned and operated Belle Starr through Sherwood Investment and Trust ("Sherwood Investment").  Id. at ¶ 4.  Mr. Olerup stated that Tom Sherwood, Tom Sherwood, Jr., and Sherwood Investment "made all of the decisions regarding hiring and firing of employees, payroll, accounting, and record retention."  Id. at ¶ 5.  Mr. Olerup affirms that Sherwood Investment and Trust issued checks to employees of Belle Starr, and operated businesses similar to Belle Starr and Angie's "all across the United States."  Id. at ¶ 8.

The information sought in Interrogatory 2 is relevant to a determination of whether any of these individuals or entities made decisions about terminations of Belle Starr's or Angie's employees.  The information may also lead to information about the location or custody of relevant documents or the identity of persons with knowledge of additional relevant information.  See FED. R. CIV. P. 26(b)(1).  Ms. Heil's motion to compel responses to Interrogatory 2 is granted.

### c.    Interrogatory 3

Ms. Heil's third interrogatory seeks the identity of all entities which

_____

provided a copy of Mr. Olerup's affidavit to the court in support of her motion to join Sherwood Investment and Trust Company as a party defendant.  See Docket Nos. 27, 29-3.

Sherwood Investment owns or operates, in whole or in part, and information relating thereto.  Docket No. 22-1, at 4.  Again, this information bears directly on an issue in the case; namely, whether Sherwood Investment maintained control over hiring and firing decisions about employees of Belle Starr or Angie's.  The information may also lead to discoverable matter regarding "the existence, description, nature, custody, condition, and location of documents" relevant to Ms. Heil's claims against the defendants.  See FED. R. CIV. P. 26(b)(1).  Ms. Heil's motion to compel responses to Interrogatory 3 is granted.

### d.    Interrogatory 4

The fourth interrogatory seeks information revealing the nature of the relationship between and among Sherwood Investment, Angie's, and Belle Star. Docket No. 22-1, at 4.  This interrogatory seeks information which "could bear on, or that reasonably could lead to other matter which could bear on," the issues in this case, including but not limited to the identity of the entity that was actually responsible for making hiring and firing decisions regarding Belle Starr and Angie's employees.  See Woodmen of the World, 2007 WL 1217919, at *1.  Ms. Heil has produced evidence that Belle Starr and Angie's were supervised by Regional Manager Terry Blood, who in turn may have reported to Tom Sherwood and Tom Sherwood, Jr., who allegedly own and operate Sherwood Investment.  See Docket No. 29-3, Aff. of J. Olerup, at ¶¶ 1-2. Accordingly, the motion to compel the defendants' response to Interrogatory 4

15

is granted.

### e.   Interrogatory 5

The fifth interrogatory seeks the reason Angie's was listed as payor on Ms. Heil's paychecks, when she was actually employed by Belle Starr.  Docket No. 22-1, at 4.  This information is relevant, in that it may lead to information which bears on "the existence, description, nature, custody, condition, and location of documents" relevant to Ms. Heil's claims against the defendants, and may reveal the nature of the relationship, if one exists, among Angie's, Belle Starr, and Sherwood Investment.  See FED. R. CIV. P. 26(b)(1).  Ms. Heil's motion to compel a response to Interrogatory 5 is granted.

### f.   Interrogatory 6

The sixth interrogatory seeks the reason Sherwood Investment apparently possesses the company records of Belle Starr and Angie's, "as reflected by the fact that Sherwood Investment . . . faxed Misty Heil's pay records."  Docket No. 22-1, at 4.  The relationship among these three entities, if one exists, is directly relevant to the claims in this case, and bears on the "existence, description, nature, custody, condition, and location of documents" relevant to Ms. Heil's claims against the defendants.  See FED. R. CIV. P. 26(b)(1).  Ms. Heil's motion to compel a response to Interrogatory 6 is granted.

### g.   Interrogatory 7

The seventh interrogatory seeks the identity of each individual or entity

which is responsible for Belle Starr's business activities.  Docket No. 22-1, at 7-8.  Ms. Heil was an employee of Belle Starr, and employment decisions made about her while she was employed at Belle Starr are directly at issue in this case.  Therefore, the information sought is relevant under Rule 26, and is reasonably calculated to lead to the discovery of admissible evidence.  See FED. R. CIV. P. 26(b)(1).  Accordingly, Ms. Heil's motion to compel the defendants' response to Interrogatory 7 is granted.

### h.    Interrogatory 8

The eighth interrogatory requests the identity of each individual or entity which is responsible for Angie's business activities.  Docket No. 22-1, at 8. The sole shareholder, officer, and director of Belle Starr, Thomas Sherwood, Jr., is also the sole shareholder, officer, and director of Angie's.  There is some indication from the record that Angie's may be a related or parent corporation of Belle Starr.  See Docket No. 22-4, at p.8.  Furthermore, a wage withholding order for garnishment of Ms. Heil's paychecks was issued by the South Dakota Department of Social Services to Angie's, rather than Belle Starr.[8]  See Docket No. 29-4.  Accordingly, as with the request made through Interrogatory 7, the

---

[8]The wage withholding order by the South Dakota Division of Child Support was provided to the court in connection with Ms. Heil's pending motion to join Sherwood Investment as a party defendant and motion to amend the complaint.  See Docket No. 27.

requested information is relevant to the issues in this case, and either bears on, or could reasonably lead to other evidence which bears on, the identity and location of documents or of persons who know of additional discoverable matter.  See FED. R. CIV. P. 26(b)(1).  Ms. Heil's motion to compel a response to Interrogatory 8 is granted.

### i.    Interrogatory 9

The ninth interrogatory requests the identity of each individual or entity which is responsible for Sherwood Investment's business activities.  Docket No. 22-1, at 8.  As the court has already stated, there is some indication that Sherwood Investment, and/or its owners and directors, may have a business relationship with Belle Starr and Angie's.  The motion to compel the defendants' response to Interrogatory 9 is granted for the same reason that the court granted the motion to compel as to Interrogatories 7 and 8.

### j.    Interrogatory 10

The tenth interrogatory seeks the identity of the entities that own the buildings and property used by the Belle Starr and Angie's, and information relating thereto.  Docket No. 22-1, at 8.  This information is relevant to the issues in the case, as it may lead to "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1).  The motion to compel a response to Interrogatory 10 is

granted.

      **k.**    **Interrogatory 11**

The eleventh interrogatory seeks the identity of every employee who worked at Belle Starr or Angie's at any time during 2007 and/or 2008, along with identifying information relating to each of those employees. Docket No. 22-1, at 8. This information is relevant, as it may lead to information including, but not limited to, whether other employees of Belle Starr or Angie's were allegedly harassed by Mr. Olerup, or that other employees reported similar conduct by Mr. Olerup to Mr. Blood. See FED. R. CIV. P. 26(b)(1).

However, the court notes that a small piece of the requested discovery named in Interrogatory 11 relates to confidential identifying information about former employees of Belle Starr and Angie's, none of whom are parties to this lawsuit. See Docket No. 22-1, p. 5-6, Interrogatory No. 11(e). Ms. Heil seeks the social security numbers of these unknown persons. The court finds that this information is neither relevant nor calculated to lead to the discovery of relevant evidence in this case, and constitutes confidential personal information which is unnecessary to ensure identification of these persons by Ms. Heil. Accordingly, Ms. Heil's motion to compel discovery is granted in part and denied in part. The defendants shall produce the information sought through Interrogatory 11, with the exception that the social security numbers of current or former employees, as requested in subsection (e), shall not be

19

disclosed.

### l.      **Interrogatory 12**

The twelfth interrogatory seeks the identity of all the institution(s) where Belle Starr, Angie's and Sherwood Investment conduct their banking activities. Docket No. 22-1, at 8.  As with the foregoing interrogatories, this information sought through interrogatory 12 is reasonably calculated to lead to discoverable material, including but not limited to the reasons Ms. Heil's paychecks were issued by Angie's rather than Belle Starr, and why Angie's received the order for wage garnishment for child support, rather than Belle Starr.  See Docket No. 29-4.  This information may indicate the custody or possession of additional documents relevant to the issues in the case.  See FED. R. CIV. P. 26(b)(1).  Accordingly, the motion to compel responses to Interrogatory 12 is granted.

### m.      **Request for Production 1**

Ms. Heil's first request for production seeks a copy of the complete tax returns for Belle Starr and Angie's, for each of the years 2008 through (and including) 2010.  Despite the defendants' lack of objection to this request, "[g]ood cause must be shown for federal income tax returns to be discoverable." Glenford Yellow Robe v. Allender, No. 09-5040-JLV, 2010 WL 1780266, at *4 (D.S.D. Apr. 30, 2010) (citing Shoenbaum v. E.I. Dupont de Nemours and Company, No. 4:05-CV-01108, 2009 WL 249099, at *1 (E.D.Mo. February 2,

2009) (memorandum and order)).

To determine whether disclosure of tax records is appropriate, most courts apply a two-part test.  Yellow Robe, 2010 WL 1780266, at *1 (internal citation omitted).  "First, the court must find that the returns are relevant to the subject matter of the action.  Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable."  Yellow Robe, 2010 WL 1780266, at *1 (quoting Hilt v. SFC Inc., 170 F.R.D. 182, 189 (D.Kan.1997) (internal citation omitted)).  Ms. Heil has not articulated how the tax records of Belle Starr and Angie's are relevant to this litigation.  This is a required showing before Ms. Heil is entitled to production of information, such as tax records, "which does not reasonably bear on the issues in the case."  Hover, 981 F.2d at 380.  Therefore, Ms. Heil's motion to compel information responsive to RFP 1 is denied.

### n.    Request for Production 2

Ms. Heil's second request for production seeks a copy of the corporate minutes for Belle Starr and Angie's, or any other entity to have discussed the operation of either Belle Starr or Angie's, for each of the years 2004 through (and including) 2010.  This information is relevant to claims at issue in this case, as it may indicate whether employment decisions with respect to Ms. Heil were made or discussed by Belle Starr, Angie's, or other entities responsible for

21

decisions made with respect to Belle Starr's or Angie's employees.  The corporate minutes may also demonstrate whether, and to what extent, discussions occurred relating to sexual harassment policies to be adopted by Belle Starr or Angie's.  Ms. Heil's motion to compel responses to RFP 2 is granted.

### o.      Request for Production 3

Ms. Heil's third request for production seeks a copy of all business agreements and lease agreements in effect for Belle Starr and Angie's during the years 2008, 2009, and 2010.  This information is relevant, as it may indicate the relationship among Belle Starr and Angie's and any other entity to have entered into business or lease agreements with either Belle Starr or Angie's.  In addition this information either bears on, or could reasonably lead to other evidence which bears on, the identity and location of documents or of persons who know of additional discoverable matter.  See FED. R. CIV. P. 26(b)(1).  Ms. Heil's motion to compel responses to RFP 3 is granted.

### 5.      Information Relating to Terry Blood

Ms. Heil also seeks an order compelling the defendants to provide the last-known contact information for Terry Blood, whom Ms. Heil asserts was the Regional Supervisor for Belle Starr and Angie's as recently as September, 2010, as well as during the specific time frame that the alleged assaults against Ms. Heil occurred.  Docket No. 21, at 12.  On November 12, 2010, defense

counsel indicated to Ms. Heil's counsel that Mr. Blood was no longer the
Regional Supervisor for the defendants.  Id.  On that same date, Ms. Heil sent a
letter to defense counsel, requesting the last known contact information for
Mr. Blood.  Docket No. 22, Aff. of B. Lee, ¶ 9.  Ms. Heil represents that the
defendants have neither supplied this information nor identified the
defendants' current Regional Supervisor, if one exists.  Docket No. 21, at 12-
13.

 Ms. Heil asserts that the information relating to Mr. Blood is relevant
because he served as the Regional Manager for the defendants during the
relevant time period, and because several of Ms. Heil's former co-workers
reported Jason Olerup's behavior to Mr. Blood while he was employed as the
defendants' Regional Manager.  See Docket 22-4, South Dakota Division of
Human Rights Determination of Probable Cause, at ¶¶ 5, 10-12, 34-35.
Mr. Blood submitted an affidavit in connection with the investigation
conducted by the South Dakota Division of Human Rights.  Id. at ¶¶ 34-35.

 Mr. Blood's affidavit states that:  he learned of Ms. Heil's allegations in
April or May, 2008; that Ms. Heil did not contact him personally about her
allegations; that he indicated to Mr. Olerup that Ms. Heil was not to be
terminated; that Ms. Heil remained on the work schedule through August,
2008; that Ms. Heil did not return to work after August, 2008, but was never
fired; that Ms. Heil received vague answers from a co-worker regarding

23

Ms. Heil's work schedule; and that the Belle Starr closed on August 28, 2008, and reopened under new management in September, 2008.  Id. at ¶ 35.

Mr. Blood's affidavit also stated that he was in charge of investigating harassment complaints made by defendants' employees; that his investigation process involved asking the complaining party of substantiating evidence; that at least one other employee of Belle Starr or Angie's lodged a formal complaint of sexual harassment against Mr. Olerup, and that Mr. Blood was in charge of that investigation; that this co-worker's complaint of sexual harassment was ultimately determined to be unsubstantiated.  Id.

Discovery is obtainable if relevant, or if reasonably calculated to lead to the discovery of relevant information.  FED. R. CIV. P. 26(b)(1); Woodmen of the World, 2007 WL 1217919, at *1.  Mr. Blood clearly has a connection with the defendants, against whom Ms. Heil's allegations are levied.  Mr. Blood is a person who may have discoverable information or knows of discoverable information in this matter.  See FED. R. CIV. P. 26(b)(1).  If the defendants currently employ a new Regional Manager, that person also qualifies as one who may know of additional discoverable information in this matter. Accordingly, Ms. Heil's motion for disclosure of the information relating to Mr. Blood and the identifying information relating to the defendants' current Regional Manager, if one is so employed, is granted.

**C.     Motion to Extend Discovery Deadlines**

In addition to her motion to compel discovery, Ms. Heil seeks the court's order extending the deadlines contained in the district court's scheduling order, filed in this case at Docket Number 15.  Rule 16 of the Federal Rules of Civil Procedure requires the district court to issue an order setting deadlines for various stages of the litigation.  See Fed. R. Civ. P. 16(b)(1) (requiring that the court set deadlines for joining parties, amending pleadings, and filing motions, and allowing the district court to set additional deadlines).  A court may modify the schedule upon a showing of good cause.  Fed. R. Civ. P. 16(b)(4).

Rule 6 of the Federal Rules of Civil Procedure controls the granting of an extension of time.  That rule provides in pertinent part as follows:

> (b)   Extending Time.
>    (1)   *In General.*  When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>       (A)   with or without motion or notice if the court acts, or if a request is made, *before* the original time or its extension expires; or
>       (B)   on motion made *after* the time has expired if the party failed to act because of excusable neglect.

See Fed. R. Civ. P. 6(b)(1) (emphasis added).  Both Rule 6 and Rule 16 must be interpreted in a manner so as to achieve the "just, speedy, and inexpensive determination of every action."  See Fed. R. Civ. P. 1.  The defendants have set forth no reason for the court to deny Ms. Heil's motion to compel and extend deadlines.

25

Because Ms. Heil filed her motion to compel and extend deadlines before the district court's discovery deadline of January 3, 2011, had expired, Ms. Heil need only demonstrate "good cause" for extending the deadline.  FED. R. CIV. P. 6(b)(1)(A).  She need not demonstrate "excusable neglect."  See FED. R. CIV. P. 6(b)(1)(B).  In addition, the court notes that on March 22, 2011, counsel of record for defendants filed a motion to withdraw from representing defendants. See Docket No. 34.

The defendants have failed to meaningfully respond to Ms. Heil's discovery requests, both during the thirty-day time limit for responding to discovery requests, pursuant to the district court's scheduling order, and up to the present day.  Ms. Heil served her second set of interrogatories and RFPs on the defendants on December 14, 2011, prior to the district court's discovery deadline of January 3, 2011.  Having received no information responsive to any of her discovery requests, Ms. Heil cannot determine at this point whether additional discovery is required or if additional pretrial motions should be filed. The court finds the defendants' failure to respond or assert timely objections to the discovery requests, which in turn necessitated the present motion to compel and extend deadlines, constitutes sufficient good cause for extending the discovery deadline and the motions deadline.  Accordingly, this court recommends that Ms. Heil's motion to extend the deadlines in her case be granted.  The district court retains discretion to grant or deny motions to

26

extend deadlines contained in its scheduling order.

### D.    Sanctions in the Form of Attorney's Fees and Expenses

Federal Rule of Civil Procedure 37(a)(5) provides in pertinent part as

follows:

> If the motion [to compel discovery] is granted–or if the disclosure or requested discovery is provided after the motion was filed–the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:
>
> > (i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii)   the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii)  other circumstances make an award of expenses unjust.

See FED. R. CIV. P. 37(a)(5)(A) (emphasis supplied).

The responsibility of a court to assess expenses, including attorney's

fees, is mandatory–the rule uses the word "must"–unless one of three

exceptions applies.  Id.  The first exception does not apply as counsel for

Ms. Heil has certified to the court that he made good faith efforts to resolve this

matter with the defendants prior to filing the motion.  See Docket No. 20.

Ms. Heil's counsel repeatedly sent correspondence and made at least one

personal phone call to defense counsel prior to filing the motion to compel.

27

Docket Nos. 21, 22.  Ms. Heil's counsel indicates that the defendants have engaged in a pattern of failing to respond to discovery requests in this case. Docket No. 21, at 11.  Specifically, discovery requests issued by Ms. Heil on January 20, 2010, were left unanswered until September 8, 2010.  Docket No. 22, Aff. of B. Lee, at ¶¶ 5-6.

The defendants have provided no indication to the court regarding the reasons they failed to respond to Ms. Heil's recovery requests, which were served on November 5, 2010, until January 3, 2011.  Therefore, the court can find no substantial justification for the untimely response.  Furthermore the assertions made in the response that was ultimately filed by the defendants, that each corporation has filed or will file a petition for dissolution in the South Dakota state court, have no effect on the defendants' obligations with respect to this litigation.  The circumstances of the defendants' petition for dissolution in state court do not bear on this litigation; therefore an award of expenses is not unjust under Rule 37(a)(5)(A)(iii).  Accordingly, Ms. Heil's motion for attorney's fees with relation to the costs of bringing the motion to compel is granted.

**CONCLUSION**

Based on the foregoing, it is hereby

ORDERED that the plaintiff's motion to compel responses to her second set of interrogatories and RFPs is granted in part and denied in part.  The

defendants shall <u>not</u> be required to disclose the social security numbers of current or former employees of Belle Starr or Angie's.  The defendants shall <u>not</u> be required to disclose tax records or other information responsive to RFP 1.  In all other respects, the defendants shall disclose complete responses to Ms. Heil's second set of interrogatories and requests for production by no later than thirty days from the date of this order.

IT IS FURTHER ORDERED that the plaintiff's motion to compel disclosure of the last-known contact information for Mr. Terry Blood, and of the identity of the new Regional Supervisor of Belle Starr and/or Angie's, if one exists, is granted.  The defendants shall disclose this information no later than fourteen business days from the date of this order.

IT IS FURTHER ORDERED that the plaintiff shall be entitled to reasonable attorney's fees and costs for bringing this motion to compel. Plaintiff shall file an affidavit with proof of service setting forth the time reasonably spent on this motion, the hourly rate requested for attorney's fees and costs, and any factual matters pertinent to the motion for attorney's fees within twenty-one days of this order.  Defendants shall file any and all objections to the allowance of fees within fourteen calendar days after receipt of service of plaintiff's motion and affidavit.  Defendants may, by counter affidavit, controvert any of the factual matters contained in Plaintiff's motion and may assert any factual matters bearing on the award of attorney's fees.  D.S.D. LR

54.1(C).  Plaintiff shall have seven days thereafter to file a reply.

IT IS FURTHER RECOMMENDED that the plaintiff's motion to extend deadlines be granted.  The specific dates of these deadlines shall be left to the determination of the district court as extension of the discovery deadline will affect other deadlines, such as the motions deadline, which are within the province of the district court to set under Rule 16.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a).  Failure to file timely objections will result in the waiver of the right to appeal matters not raised in the objections.  Id.  Objections must be timely and specific in order to require review by the district court.

Dated March 29, 2011.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE